WILLIAM H. POTTS, appellant, and THE NEW JERSEY ARMS AND ORDNANCE COMPANY and others, respondents.

A receiver, appointed by virtue of the "act to prevent frauds by in-corporated companies," will not be authorized, as the law stands, to sell the real estate, clear of encumbrances, and to pay the proceeds into the court, but must sell, as sheriffs and other officers do, subject to encumbrances.*

---

*Mr. B. Van Syckel* and *Mr. Browning,* (with whom was *Mr. E. T Green*), for appellant.

---

*By an act approved March 13th, 1866, receivers, appointed by virtue of "the act to prevent frauds, &c.," were authorized to sell the real estate, free of encumbrances, and under that act, the receiver in this case was directed so to sell the real estate which had come into his hands. The case is reported further, *ante p.* 395.

*Mr. A. O. Zabriskie* and *Mr. J. T. Williams*, (of New York), for respondents.

The opinion of the court was delivered by

ELMER, J. The Chancellor made an order in this cause, declaring the New Jersey Arms and Ordnance Company to be insolvent, and appointed a receiver, in pursuance of the statute entitled "An act to prevent frauds by incorporated companies," (*Nix. Dig.* 371.) The property of the company, consisting of real and personal estate, and some of it liable to deterioration, was subject to two mortgages, the fairness and obligation of which were called in question by the complainant's bill. It being the opinion of the receiver that he could only sell the property subject to the encumbrances, a petition was filed by the complainant, setting forth the proceedings on his original bill, and praying that the receiver may be ordered and decreed to sell and dispose of the said real and personal property, free and clear of the liens and encumbrances of the said two mortgages, and that the proceeds of said sale be paid into court, to await the decision of the matters before the court for adjudication, and abide the issue of the said suit of the petitioner. The Chancellor, being of opinion that such an order was not within the power of the court, and ought not to be made, decreed that the order applied for be refused and denied, without costs. From this decretal order the complainant has appealed, and the question which has been argued, and is now to be decided by this court, is whether the Chancellor has, by law, the power to make the order applied for.

It is manifest that the question turns on the construction of the statute, under which the proceedings were had. That statute confers upon the Chancellor the power to declare a corporation insolvent, and to appoint a receiver, who is to take possession of, and sell the property for the benefit of creditors. When a case is properly before him, he will, of course, proceed in all matters not regulated by the statute, according to the general principles of equity, applicable to

antilogous cases; and had it been shown that such principles justified the order requested, and that nothing in the statute forbade it, he would, no doubt, have made the order, if the circumstances of the case required such a course. A court of admiralty, when proceeding *in rem,* so that all persons interested in the property are held to be parties and before the court, does exercise this power; but courts of equity have no such practice. In the case of *Gihon* v. *The Bellville White Lead Company,* 3 *Halst. Ch. R.* 531, it was held that a second mortgagee cannot sell the property clear of the encumbrance of the first mortgage, nor compel him to have a sale on his mortgage, without first paying him, or tendering him his money; and this is understood to be the established principle of the court. We must, therefore, look to the statute, to see whether this power is conferred in this particular case.

The seventh section, (*Nix. Dig.* 373,) gives power to the receiver to sue for, and collect debts, and to take and possess the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes, and property of every description, belonging to the said company at the time of the insolvency, and to sell, convey, or assign, all the said real and personal estate, and to pay into the Court of Chancery, all the moneys and securities for money arising from such sales, to be disposed of under the order of the court, among the creditors of the company. The fifteenth section directs, that in the payment of the creditors, they shall be paid proportionably to the amount of their respective debts, excepting mortgage and judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors. It is argued for the appellant, that these two sections, and especially the direction respecting the payment of mortgage and judgment creditors in the sixteenth, confers a general power on the receiver, to sell and make the money to pay them, in such manner as he may deem advisable, and of course on the court, to direct him accordingly.

It is clear, and could not be denied on the argument, that

the uniform policy of the laws of this state has always been, to require property, sold for the payment of debts, whether by virtue of executions, attachments, assignments, or orders of the Orphans Court, to be sold subject to all prior encumbrances, with the single exception of judgments upon which no execution has issued, which, by the express language of the statute, (*Nix. Dig.* 762, § 9,) are postponed in favor of executions first issued. There is certainly nothing in the act in question, which declares, in terms, any intention to depart from this policy; nor am I able to see that any such intention can safely be implied. The language of the seventh section, which authorizes the receiver to sell all the real and personal property of the corporation, is not stronger than the language of a statutory execution, or of an order of the Orphans Court. The exception in the fifteenth section, in regard to the distribution of the money received, among the mortgage and judgment creditors, was, no doubt, as the counsel on both sides agreed, copied from the first section of the act authorizing voluntary assignments, (*Nix. Dig.* 30,) which was prior in time. These words in that act, so long ago as 1838, were construed by the Supreme Court, in the case of *Vanderveer* v. *Conover*, 1 *Harr.* 490, to mean, not that the mortgage and judgment creditors should be preferred to the whole extent of their mortgage and judgment debts, but only that the old liens should remain unaffected by the assignment, a construction which has since been followed, and no reason appears why they should not have the same meaning in this statute.

In the case of *Bell* v. *Fleming's ex'rs*, 1 *Beas.* 490, it was held by this court, that an assignment does not impair a mortgage security, and that the mortgagee may interpose a claim for his debt, and also proceed on his mortgage so as to maintain his lien; departing in this respect from the practice of the English courts in cases of bankruptcy, who hold that if the mortgagee proves his debt, he must deliver up his mortgage for the benefit of the creditor.

The only case that has sanctioned the order asked for by

the petitioner, is that of *Kelly* v. *The Neshanic Mining Company*, 3 *Halst. Ch. R.* 579, which having been now expressly overruled by the case before us, the question comes, for the first time, before this court. It is to be remarked, too, that in the overruled case, the lien creditors appear to have been directly before the court, by means of bills filed by them, or otherwise, which is not the fact now, so that the appellant's counsel have been driven to contend, that all creditors are necessarily before the court, in the case of an insolvent corporation. Not being able to take this view of the case, and being of opinion that there is nothing in the act in question, which interferes with liens that exist when the insolvency occurs, or which authorizes a receiver to sell otherwise than subject to them, I think the order of the Chancellor, refusing the direction applied for, was correct.

Many cases may, no doubt, be imagined, where it would be greatly to the advantage of mortgage and judgment creditors, for the receiver to sell the property, clear of encumbrances; but if so, their consent can generally be obtained. Other creditors may often suffer by following the course marked out by our laws, and probably the case before us is one of that kind. However this may be, additional legislation is necessary before the law can be changed. The duty of the court is to apply the law as it exists, and not to attempt the introduction of new provisions, however desirable they may seem. The decree must be affirmed, but without costs.

The decree of the Chancellor was affirmed by the following vote:

*For affirmance*—CLEMENT, CORNELISON, ELMER, FORT, HAINES, VAN DYKE, VAIL.   7.

*For reversal*—KENNEDY, VREDENBURGH, WALES.   3.